PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

SOLOMON N. POWELL,

      *Defendant-Appellant.*

No. 09-4012

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, Chief District Judge.
(3:07-cr-00324-JRS-1)

Argued: March 23, 2011

Decided: May 12, 2011

Before WILKINSON, SHEDD, and DUNCAN,
Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Shedd and Judge Duncan joined.

## COUNSEL

**ARGUED:** Charles D. Lewis, Richmond, Virginia, for Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Neil H. MacBride, United States

Attorney, Alexandria, Virginia, Michael R. Gill, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

Solomon Powell was convicted of mail fraud, wire fraud, and attempted destruction of evidence because of his business of selling merchandise over the Internet and then pocketing the money without sending along the products. At sentencing, the district court relied on hearsay in concluding that Powell's scheme harmed more than ten people and caused just under $200,000 in damage, subjecting him to an increased advisory Guidelines sentence. He contends that because the Confrontation Clause applies with full force to sentencing proceedings, his sentence must be vacated.

We disagree. In accordance with our sister circuits, we conclude that the Confrontation Clause does not apply at sentencing proceedings like Powell's. This holding respects the traditional distinction between trial and sentencing, the sentencing court's need to consider a wide variety of evidence in choosing an appropriate sentence, and the sentencing judge's ability to properly evaluate that evidence. The judgment of the district court is therefore affirmed.

I.

Solomon Powell ran several businesses selling electronics and other items over the Internet. Using a number of websites he had acquired, as well as accounts he established with the online auction service eBay and the payment transfer service PayPal, Powell "sold" his products to customers who contacted him through the websites. But despite paying the requi-

site funds to Powell, only rarely did anything show up on customers' doorsteps. After largely fruitless attempts to reach him for redress, many of Powell's customers contacted groups such as the Better Business Bureau. Their complaints reached the ears of postal inspectors who began looking into Powell's practices, an investigation that culminated in Powell's indictment. A jury convicted Powell on five counts of wire fraud, two counts of mail fraud, and one count of attempted destruction of evidence.

Powell's presentence report determined that his scheme had harmed more than fifty people and had caused damages to the tune of over $200,000. The government arrived at these numbers largely by relying on information gathered by Postal Inspector Evelyn Cross. Inspector Cross combed through numerous complaints lodged with and filed against Powell, the loss reports submitted by entities such as American Express (which ended up footing the bill for many of its customers' attempted purchases), and Powell's own electronic records and correspondence. She further contacted other possible customers of Powell to determine whether they had actually sent payment to him and whether they had ever received any merchandise or refund from him. Based on the conclusions she reached, the government sought to enhance Powell's recommended Guidelines sentence. *See* U.S.S.G. § 2B1.1(b)(2)(B) (number of victims); § 2B1.1(b)(1)(G) (loss caused). When combined with Powell's criminal history, the enhancements based on these numbers would have led to a Guidelines range of 120 to 150 months in prison.

Powell disputed both enhancements. Because the number of victims and amount of loss was determined not solely by the testimony of trial witnesses subject to cross-examination, but also by the out-of-court statements of alleged victims to Inspector Cross, Powell contended that giving him an enhanced sentence would violate his Confrontation Clause rights. He requested that the sentencing court limit itself to the eight victims who had actually testified and to the less than

$20,000 they lost, resulting in no enhancement for the number of victims and at most a four-level loss enhancement. *See* U.S.S.G. § 2B1.1(b)(2) (number of victims); § 2B1.1(b)(1)(A)–(C) (loss caused).

The sentencing court conducted an evidentiary hearing on these issues. Inspector Cross testified and was cross-examined about the methods she used to determine these numbers and the possible shortcomings of her approach. The court, "just purely giving Mr. Powell the benefit of the doubt," reduced the number of victims from more than fifty to more than ten and the intended amount of loss caused to $199,000, resulting in a lowered Guidelines range of 84 to 105 months. After hearing from the government, Powell's attorney, and Powell himself, the court sentenced Powell to concurrent sentences of 102 months on each count. He was later ordered to pay $43,732.91 in restitution.

## II.

Powell argues that the district court violated his Confrontation Clause rights by relying on the out-of-court statements of people who did not testify and were never cross-examined in determining that he harmed more than ten victims and that he caused just shy of $200,000 in losses. He further contends that cross-examination is the only way to ensure that such evidence is sufficiently reliable.

## A.

Powell's Confrontation Clause argument ignores the fundamental differences between trial and sentencing. "Tribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations," *Williams v. New York*, 337 U.S. 241, 246 (1949), and rightfully so: because the criminal trial is the means by which we determine the guilt of someone presumed innocent, we afford the defendant a host of evidentiary protections designed to ensure that

society's affixation of wrongdoing is accurately made. The defendant's right to be "confronted with the witnesses against him" is among these protections. U.S. Const. amend. VI. By giving the accused the power to cross-examine those providing evidence against him at trial, the Confrontation Clause affords him the "greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970) (quoting 5 J. Wigmore, Evidence § 1367 (3d ed. 1940)).

Once the accused has been properly convicted, however, the purposes of the proceeding—and the evidentiary rules governing it—change. Congress has instructed sentencing judges to consider a host of fact-intensive issues when imposing sentence, including the particular defendant's background and conduct, the need to punish and deter criminal wrongdoing, and the need to eliminate unjustified sentencing disparities. *See* 18 U.S.C. § 3553(a). To accomplish these ends and to realize "the principle that 'the punishment should fit the offender and not merely the crime,'" *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (quoting *Williams*, 337 U.S. at 247), the sentencing judge must have recourse to a much broader array of information than we allow the trier of fact to consider in determining a defendant's guilt.

Courts have accordingly "long recognized that sentencing judges 'exercise a wide discretion' in the types of evidence they may consider when imposing sentence . . . ." *Id.* at 1235 (quoting *Williams*, 337 U.S. at 246); *see, e.g.*, *Payne v. Tennessee*, 501 U.S. 808, 820–21 (1991) ("Whatever the prevailing sentencing philosophy, the sentencing authority has always been free to consider a wide range of relevant material."). This recognition is further grounded in the applicable criminal, evidentiary, and sentencing codes. *See* 18 U.S.C. § 3661 (stating that "[n]o limitation shall be placed on the information concerning the background, character, and conduct" to be considered at sentencing); Fed. R. Evid. 1101(d)(3) (exempting sentencing proceedings from the Fed-

eral Rules of Evidence); U.S.S.G. § 6A1.3(a) (allowing sentencing courts to consider all relevant information regardless of admissibility at trial provided it has "sufficient indicia of reliability").

This widened evidentiary universe at sentencing has always included reliable hearsay of many varieties, the Confrontation Clause notwithstanding. *Williams*, for example, noted that "most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination," and it upheld a state sentencing scheme allowing consideration of evidence "obtained outside the courtroom from persons whom a defendant has not been permitted to confront or cross-examine." *Williams*, 337 U.S. at 245, 250.

We too have repeatedly allowed a sentencing court to consider "any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy." *United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010); *see also United States v. Fulks*, 454 F.3d 410, 436 (4th Cir. 2006) (affirming the use of reliable hearsay); *United States v. Love*, 134 F.3d 595, 607 (4th Cir. 1998) (same). Indeed, in *United States v. Johnson*, 935 F.2d 47, 50 (4th Cir. 1991), we affirmed a sentence where the defendant had no opportunity to cross-examine probation officers about ex parte communications between them and the sentencing court, noting that "[w]hen a probation officer imparts information to a sentencing court as its neutral agent, the interests underlying the confrontation clause are not implicated."

### B.

Recent Confrontation Clause decisions do not require us to reconsider this settled distinction between trial evidence and sentencing evidence in the hearsay context. In a line of cases

beginning with *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court has held that the Confrontation Clause generally bars the use of testimonial hearsay at trial unless the declarant is not available to testify and the defendant had a prior opportunity to cross-examine him. *See, e.g.*, *Michigan v. Bryant*, 131 S. Ct. 1143, 1153 (2011).[1] But nothing in these cases states that the confrontation right applies at sentencing; indeed, they suggest precisely the opposite.

*Crawford*, for instance, framed its inquiry as whether the phrase "witnesses against" in the Confrontation Clause means "those who actually testify at trial, those whose statements are offered at trial, or something in-between." *Crawford*, 541 U.S. at 42–43 (citations omitted). It declared that "[t]he Constitution prescribes a procedure for determining the reliability of testimony in criminal trials . . . ." *Id.* at 67. *Bryant* likewise spoke of the Confrontation Clause "bar[ring] the admission of a statement at trial." *Bryant*, 131 S. Ct. at 1162. And *Giles v. California*, 554 U.S. 353, 365 (2008), referred to the confrontation right as "essential to a fair trial."

If the Supreme Court had wished to extend confrontation rights to sentencing, it would hardly have done so by carefully describing those rights as protecting accused defendants during the determination of their guilt or innocence. Moreover, even if we thought that *Crawford* somehow cast doubt on *Williams*'s rejection of confrontation-based challenges at sentencing, it is the Court's job, not ours, to overrule its precedents, *see Agostini v. Felton*, 521 U.S. 203, 237–38 (1997), especially where all indicators suggest it still embraces the precedent's basic holding, *see, e.g.*, *Pepper*, 131 S. Ct. at 1239–40 (quoting extensively from *Williams* in describing a sentencing court's broad evidentiary discretion).

---

[1]Because the Confrontation Clause did not apply at Powell's sentencing proceeding, we need not parse which of the statements relied upon below were testimonial and which were not.

So these new decisions only underscore the point that our holding is old-hat. And in holding that the Confrontation Clause does not apply at sentencing, we join every other federal circuit court that hears criminal appeals. *See United States v. Bras*, 483 F.3d 103, 109 (D.C. Cir. 2007); *United States v. Robinson*, 482 F.3d 244, 246 (3d Cir. 2007); *United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006); *United States v. Bustamante*, 454 F.3d 1200, 1202–03 (10th Cir. 2006); *United States v. Littlesun*, 444 F.3d 1196, 1199–1200 (9th Cir. 2006); *United States v. Stone*, 432 F.3d 651, 654 (6th Cir. 2005); *United States v. Brown*, 430 F.3d 942, 943–44 (8th Cir. 2005); *United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005); *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005); *United States v. Luciano*, 414 F.3d 174, 179 (1st Cir. 2005); *United States v. Martinez*, 413 F.3d 239, 242–44 (2d Cir. 2005).

These courts have also noted the distinction between trial rights and sentencing proceedings, *see, e.g.*, *Cantellano*, 430 F.3d at 1146, the traditional use of reliable hearsay at sentencing, *see, e.g.*, *Bras*, 483 F.3d at 108–09, and the need to consider such evidence in order to sentence properly, *see, e.g.*, *Martinez*, 413 F.3d at 243–44. Even if we could, we see no reason to depart from decades of precedent from the Supreme Court, our own court, and our sister circuits.

## C.

Although the Confrontation Clause does not apply at Powell's sentencing, that does not mean Powell lacks all evidentiary protections. Due process requires that sentencing courts rely only on evidence with some minimal level of reliability, *see, e.g.*, *Roche*, 415 F.3d at 618, and the Guidelines themselves demand that the evidence used have "sufficient indicia of reliability to support its probable accuracy," U.S.S.G. § 6A1.3(a). The evidence here comfortably satisfied this standard.

Powell contends categorically that without cross-examination evidence can never be reliable enough for use at sentencing. Our accepted sentencing practices prove otherwise. We task probation officers with creating a presentence report detailing an offender's particular history and pertinent conduct. *See* 18 U.S.C. § 3552(a); Fed. R. Crim. P. 32(d). As noted above, we then assign sentencing judges the responsibility of determining a specific sentence for a unique defendant's particular crimes and free them from the ordinary rules of evidence to make that determination. *See* 18 U.S.C. § 3553(a); *id.* § 3661. It would be odd indeed for us to then automatically treat any hearsay evidence found within presentence reports as forbidden because we do not trust sentencing judges' ability to adequately assess that evidence's proper weight given its potential flaws.

A categorical position that hearsay is unreliable as a matter of due process would also run headlong into precedent. In *United States v. Terry*, 916 F.2d 157, 160–61 (4th Cir. 1990), for instance, we noted the traditional use of reliable hearsay at sentencing and the procedural safeguards in place to protect defendants against the use of factually incorrect evidence. We further stated that "[a] mere objection to the finding in the presentence report" –- reports often chock full of hearsay –- "is not sufficient. The defendant has an affirmative duty to make a showing that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." *Id.* at 162. However, if the defendant makes no such showing, the court may "adopt the [presentence report's] findings . . . without more specific inquiry." *Id.* Given this presumption of reliability and the routine use of hearsay evidence found within presentence reports, such evidence cannot be categorically infirm.

Nor is there anything that gives us pause about the particular evidence used in this case. Powell never seriously contended that the supposed victims did not exist or had not actually been harmed. Rather, he disputed whether those

listed could straightforwardly be identified as victims given the government's inability to follow up with all of those identified in the records. The district court heard Inspector Cross testify about her construction from Powell's and other business records of a list of victims and losses caused, her often successful attempts to contact those listed for further information, and her scrupulous recordkeeping regarding those who had never paid Powell or who had received partial compensation from him. The court also heard Powell's counsel challenge Cross regarding her assumption that those whose names were found in the relevant records as having purchased an item and as having complained about not receiving it were presumed victims despite the lack of more direct evidence, an assumption she defended by noting the rarity of Powell providing anyone with anything.

After this detailed inquiry into the government's evidence, the district court gave Powell the benefit of every residual doubt by reducing the loss caused to $199,000 and the number of victims to more than ten. Both of these figures were more than supported by the evidence, much of which came from Powell's own records, and Powell has never given any reason to believe these figures were materially inaccurate or unreliable. Due process is fully satisfied by reliance on evidence so methodically gathered and so carefully evaluated as that here.

## III.

Powell also argues that the district court failed to explain how the sentencing factors found in 18 U.S.C. § 3553(a) led to the sentence it imposed. Powell is correct in noting that sentencing courts have an obligation to provide an "individualized explanation" for every sentence, though they need not "'robotically tick through § 3553(a)'s every subsection,' particularly when imposing a within-Guidelines sentence." *United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010)

(quoting *United States v. Johnson*, 445 F.3d 339, 345 (4th Cir. 2006)).

However, even if the district court did not provide a sufficient explanation, we need not vacate Powell's sentence. To preserve a challenge to this type of procedural error, the defendant need not specifically object after the court has pronounced a sentence, but he must at some point in the proceedings "draw[ ] arguments from § 3553 *for a sentence different than the one ultimately imposed . . . .*" *Id.* at 578 (emphasis added); *see also United States v. Boulware*, 604 F.3d 832, 838 (4th Cir. 2010) ("[A]rguments made under § 3553(a) for a sentence different than the one that is eventually imposed are sufficient to preserve claims . . . ."); *United States v. Thompson*, 595 F.3d 544, 546 (4th Cir. 2010) ("[A] defendant need only ask for a sentence outside the range calculated by the court prior to sentencing in order to preserve his claim for appellate review."). If he does not do so, plain error review applies. *See Lynn*, 592 F.3d at 577.

Powell did not preserve his challenge. Despite the government's request for a sentence "at the top of the range," his counsel, like one of the defendants in *Lynn*, never requested a different within-Guidelines sentence or a downward departure based on § 3553(a)'s factors. *See id.* at 580. Rather, counsel simply noted Powell's difficult relationship with his parents as part of his request that Powell be given mental health and social counseling. His only other requests were that Powell be provided with educational and vocational opportunities and that Powell not be fined. All of these requests were granted.

Nor did Powell's own statements preserve his claim. He did ask the court to consider a number of "factors" in sentencing him –– including his struggles as a supposed "small business owner," the alleged failings of his lawyers, and the government's hypothesized trickery—but he never requested anything like a low-end sentence or a departure. Oblique

references such as these do not "sufficiently alert[ ] the district court of its responsibility to render an individualized explanation addressing those arguments" under § 3553, *id.* at 578, because they are not "arguments" under § 3553 for a lower sentence at all, *see id.* at 581–82 (counsel's request for a low-end sentence or departure based on the circumstances of the crime preserved the claim); *id.* at 583–84 (counsel's request for a variance and arguments against the reasonableness of any sentence based on career offender status preserved the claim).

Applying the plain error standard, Powell cannot show that the error affected his substantial rights. Powell received a within-Guidelines sentence that we presume on appeal was reasonable. *See, e.g.*, *Rita v. United States*, 551 U.S. 338, 347 (2007); *Johnson*, 445 F.3d at 341-44. He received everything his lawyer requested from the sentencing judge. *See Lynn*, 592 F.3d at 580 (finding no plain error where the defendant obtained the within-Guidelines sentence his counsel requested). And his own statements did little to help his case: he gave scant indication that he understood the gravity of his offenses, spent much of his time criticizing his counsel and those investigating him, and pointed largely to the typical difficulties of imprisonment in asking to be sentenced "appropriately." Simply put, Powell has not demonstrated that any lack of explanation "had a prejudicial effect on the sentence imposed." *Id.*; *see also Boulware*, 604 F.3d at 840 (finding a *preserved* § 3553(a) explanation error harmless in part because "the notion that having to explain its analysis further might have changed the district court's mind" was "simply unrealistic" and a remand for resentencing would have been "a pointless waste of resources").[2]

---

[2]We similarly reject Powell's substantive challenge to the length of his sentence. He received a presumed-reasonable, within-Guidelines sentence, and neither he nor the record leads us to conclude the district court erred, let alone reversibly so, in sentencing him as it did.

## IV.

For these reasons, the judgment of the district court is

*AFFIRMED*.