**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-4456**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

OPIO DIARRA MOORE, a/k/a O,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, District Judge. (8:08-cr-00203-RWT-1)

Argued: March 20, 2012                    Decided: June 27, 2012

Before TRAXLER, Chief Judge, and GREGORY and WYNN, Circuit Judges.

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Chief Judge Traxler and Judge Gregory concurred.

**ARGUED:** Michael Lawlor, LAWLOR & ENGLERT, LLC, Greenbelt, Maryland, for Appellant. Emily Noel Glatfelter, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** Gwendolyn R. Waters, LAWLOR & ENGLERT, LLC, Greenbelt, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Deborah A. Johnston, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Defendant Opio Diarra Moore appeals from his convictions and sentence for being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1), and conspiring to be a felon in possession of ammunition, in violation of 18 U.S.C. § 371. After a careful review of the record, we conclude that the district court did not err in denying Defendant's motion to suppress for lack of probable cause. We further find that the sentence imposed was both procedurally and substantively reasonable, free of error. Finally, we discern no abuse of discretion in the district court's decision to limit Defendant's access to information obtained by certain Rule 17(c) subpoenas.

I.

On August 30, 2006, as part of a joint task force with the District of Columbia Metropolitan Police Department, a team of agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") set up surveillance of the Realco gun store in Prince George's County, Maryland. A member of the surveillance team later testified that the Realco store had "been identified as one of the leading gun stores in the area that ammunition and guns have been recovered in and around D.C. from that store." J.A. 30. As such, the purpose of the surveillance was to "look for individuals coming out of the gun

3

store carrying what [the team] suspect[s] is either a firearm or ammunition," with individuals with District of Columbia license plates arousing particular suspicion because it was illegal at that time to possess unregistered firearms or ammunition in the District of Columbia. J.A. 31-32; see also D.C. Code §§ 7-2502.1, 7-2506.01 (2006).

At around 5:00 p.m., the surveillance team saw a green minivan pull into the parking lot of the store, followed shortly thereafter by a black Jeep that pulled into the restaurant parking lot adjacent to the store, where the team was located. The female driver of the van walked to the Jeep, engaged in conversation with its male driver, who was at that point the vehicle's sole occupant, and then walked into the Realco store, emerging a few minutes later carrying a black bag with a heavy square object in it. According to one of the ATF agents on the surveillance team, the "square heavy object . . . was consistent with, and due to our experience consistent with, ammunition." J.A. 32-33.

The woman then went directly to her minivan, got in, and left the parking lot, followed closely by the Jeep, heading in the direction of the District of Columbia. After about a mile, the minivan and Jeep pulled into adjacent spots in the parking lot of a shopping center. The surveillance team, which had followed the vehicles, then witnessed the two drivers talk for a

4

brief moment before the Jeep's driver handed money to the woman in exchange for the black bag.  The Jeep's driver then went "to the passenger side rear door [of his vehicle], open[ed] the door and fidget[ed] around in the backseat area and then close[d] the door and came out without the bag in his hand."  J.A. 36.  Also at this time, a male passenger in the minivan got out, went into the nearby convenience store and made a purchase, and then got into the Jeep, not the minivan, after he came out of the store.

Both vehicles left the parking lot, and the surveillance team followed the Jeep for about four to five miles into the District of Columbia, where it initiated a traffic stop of the Jeep.  The driver, later identified as Defendant, was handcuffed, and the Jeep was searched, leading to the discovery of a box of .40 caliber ammunition in a black bag underneath the rear passenger seat.  The black bag appeared to be the same size and shape as what had previously been observed by the surveillance team.  The passenger was not arrested.

Defendant was taken into custody and subsequently charged with one count of possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of conspiracy to possess ammunition after having been convicted of a felony, in violation of 18 U.S.C. § 371.  Before trial, the district court denied Defendant's motion to suppress the evidence seized following the traffic stop in the District of

5

Columbia, concluding that law enforcement authorities had sufficient probable cause to believe criminal activity was afoot to initiate the traffic stop and search the vehicle. Defendant was found guilty following his trial by jury.

Defendant's Presentence Report calculated his Guidelines range as 188 to 235 months' imprisonment for the possession conviction and 60 months' imprisonment on the conspiracy conviction. However, based on the nature and circumstances of his offense, his behavior while previously incarcerated, and his alleged post-release involvement in murders and other uncharged offenses, the Government sought an upward variance and a sentence of life in prison for Defendant, which would be the statutory maximum for the possession conviction.

Before Defendant's sentencing hearing, his attorney[1] served subpoenas duces tecum on the custodians of records for the District of Columbia's Department of Corrections and the United States Marshal for the Eastern District of Virginia. However, following a hearing, the district court quashed the subpoenas to the extent that they sought pre-trial production of certain records, finding "little, if anything, from [its] review of

---

[1] Defendant's original counsel learned of a conflict between trial and sentencing and was subsequently removed and replaced by new, court-appointed counsel, who also represented Defendant in his appeal before this Court.

6

these records that would be of use to the Defendant in this case." J.A. 816. The district court emphasized the potential unfairness of "a fishing expedition into these records that contain a number of matters that raise considerable security concerns, where they [are] disclosed without significant justification for doing so." J.A. 843. Accordingly, the district court granted the Government's motion for a protective order, while also directing the Government to review the records sought and determine whether any information would be germane to Defendant's cross-examination of the subject of the subpoenas.

At the sentencing hearing, the Government presented significant testimony and other evidence in support of its request for a life sentence. Specifically, the district court heard details of Defendant's violent behavior while previously incarcerated, as well as about his alleged participation in several murders, attempted murders, and other crimes, including numerous burglaries and helping an associate escape from prison. At the conclusion of the hearing, the district court imposed the requested upward variance and sentenced Defendant to life in prison on the possession charge, with a concurrent sentence of sixty months on the conspiracy charge.

II.

On appeal, Defendant argues that the district court erred by denying his motion to suppress, by imposing a sentence that is procedurally and substantively unreasonable, and by quashing his subpoenas.

A.

Defendant first argues that the law enforcement surveillance team lacked the probable cause necessary to initiate the traffic stop and search his vehicle, and the box of ammunition must therefore be suppressed. Specifically, Defendant maintains that because he was handcuffed immediately after his vehicle was stopped, the search needed to be independently supported by probable cause, separate and apart from what gave rise to the traffic stop itself.

This Court reviews the legal conclusions of a district court's denial of a motion to suppress de novo, and the findings of fact for clear error, construing the evidence in the light most favorable to the Government, the prevailing party below. United States v. Foster, 634 F.3d 243, 246 (4th Cir. 2011). The determination of whether probable cause exists depends on the totality of the circumstances and involves a "practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular

place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Significantly, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Id. at 232; United States v. Gary, 528 F.3d 324, 327 (4th Cir. 2008) ("[A] finding of probable cause does not require absolute certainty.").

As such, this Court has noted that we "'give due weight to inferences drawn from [the] facts by . . . local law enforcement officers.'" United States v. Moses, 540 F.3d 263, 269 (4th Cir. 2008) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). Further, we have held that law enforcement authorities may conduct a warrantless search of a vehicle if it is readily mobile and probable cause exists to believe it contains contraband or other evidence of illegal activity. United States v. Kelly, 592 F.3d 586, 589 (4th Cir.), cert. denied, 130 S. Ct. 3374 (2010); see also United States v. Brookins, 345 F.3d 231, 235 (4th Cir. 2003) (relying on Chambers v. Maroney, 399 U.S. 42, 52 (1970), to allow both a stop, seizure, and subsequent search of a vehicle without a warrant if there is probable cause to believe that a moving vehicle contains contraband or other evidence of illegal activity).

Here, Defendant contends that the surveillance team acted on a mere hunch, rather than sufficient probable cause, when it

9

stopped and searched his vehicle. According to Defendant, the officers had no actual knowledge that the black bag that was exchanged did contain ammunition, that it was even the same bag that was exchanged, or, since they did not know Defendant's identity, that Defendant was not permitted to carry ammunition in the District of Columbia. Instead, Defendant maintains that the officers were suspicious because he fit a profile of someone they believed likely to purchase firearms illegally.

We find these arguments to be unavailing. Viewing the evidence in the light most favorable to the Government, as we must, the officers had sufficient probable cause to support both the initial traffic stop and the subsequent search of Defendant's vehicle. We agree with the district court's summary of the evidence at the close of the hearing on Defendant's motion to suppress:

> [T]here was adequate probable cause to make the stop of the defendant's vehicle on August 30, 2006. The team of officers involved in this case had observed a conversation before the black female entered the store. They see the black female exit. They see the two vehicles go to a different location, an exchange of cash for the heavy plastic black bag, which was consistent with ammunition, and then they see the vehicles separate and the defendant's vehicle enter the District of Columbia, where it's a violation of the law at that time to have the ammunition in his possession.

J.A. 65. We can discern no error in this ruling and likewise find that it was reasonable for the officers to believe that

10

criminal activity was afoot and that Defendant's vehicle likely contained illegal contraband.

We base this finding of probable cause on several factors. First, as noted by the district court, absent narrow exceptions, possession of ammunition in the District of Columbia was at that time illegal, and it was more likely than not that Defendant, even unidentified, did not meet one of the exceptions. See D.C. Code §§ 7-2502.1, 7-2506.01. Second, if Defendant met one of those exceptions and was permitted to possess ammunition, there would have been no reason to engage in the type of straw purchase witnessed by the surveillance team. Instead, he would simply have bought it himself.

Undoubtedly, an alternative reason could be put forward to support why Defendant had someone else purchase the ammunition on his behalf—and indeed, Defendant has attempted to do just that, both before the district court and on appeal. Nevertheless, as noted above, probable cause does not require absolute certainty. Gary, 528 F.3d at 327. Rather, the officers needed to show only the "fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. Likewise, while the officers did not have conclusive evidence that the bag they saw exchanged did, in fact, contain ammunition, it was reasonable for them to make that inference, given that the woman carried the bag out of

11

a Realco gun store, the bag contained an object that appeared to be the same size and weight as a box of ammunition, and the officers' experience with previous surveillance of that store.

In light of this evidence, we conclude that the officers did have probable cause to believe that Defendant's vehicle, stopped in the District of Columbia and with District of Columbia tags, at that point contained contraband. Accordingly, we affirm the district court's denial of Defendant's motion to suppress.

B.

Next, Defendant argues that the sentence imposed by the district court is procedurally and substantively unreasonable. Specifically, Defendant maintains that his Fifth and Sixth Amendment rights were violated because the district court increased his sentence above the Guidelines range based on facts not found by a jury or beyond a reasonable doubt, allowed hearsay testimony at the sentencing hearing, failed to adequately connect his sentence to the factors set out in 18 U.S.C. § 3553, and based his sentence on conduct unrelated to his convictions.

"[W]hether inside, just outside, or significantly outside the Guidelines range," we review a sentence imposed by the district court under a "deferential abuse-of-discretion

12

standard." Gall v. United States, 552 U.S. 38, 41 (2007). This review entails appellate consideration of both the procedural and substantive reasonableness of the sentence. Id. at 51. The Supreme Court has further emphasized that "it is not for the Court of Appeals to decide de novo whether the justification for a variance is sufficient or the sentence reasonable," but rather, review for an abuse of discretion means that an appellate court "should . . . give[] due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." Id. at 59-60.

Procedural reasonableness requires that the district court properly calculated the applicable Guidelines range, considered the § 3553 factors and arguments presented by the parties, did not determine an individualized sentence based on "clearly erroneous facts," and explained sufficiently the sentence imposed. Id. at 49-51. See also United States v. Pauley, 511 F.3d 468, 473 (4th Cir. 2007).

Substantive reasonableness "take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Gall, 552 U.S. at 51. To determine whether the district court abused its discretion in imposing an upward variance, we consider "whether the sentencing court acted reasonably both with respect to its decision to

impose such a sentence and with respect to the extent of the divergence from the sentencing range." United States v. Hernandez-Villanueva, 473 F.3d 118, 123 (4th Cir. 2007). A sentence is unreasonable if the sentencing "court provides an inadequate statement of reasons or relies on improper factors in imposing a sentence outside the properly calculated advisory sentencing range." Id.

Here, the district court determined that, based on his prior convictions, Defendant was an armed career criminal. As such, the district court calculated his Guidelines range on the possession count at 188 to 235 months in prison and his Guidelines sentence on the conspiracy count at 60 months in prison. After hearing extensive evidence about Defendant's criminal and violent history, the court imposed an upward variance on the possession count and sentenced Defendant to the statutory maximum of life in prison.

Defendant's challenge to his sentence as procedurally unreasonable is based on two claims: (1) the district court erred by determining that he was an armed career criminal and calculating his Guidelines range accordingly; and (2) the district court cited, but did not meaningfully consider, the § 3553 factors as required. We find both arguments to be without merit.

14

With respect to Defendant's status as an armed career criminal, he does not dispute the fact of his prior convictions or whether they were properly considered for purposes of armed career criminal status. Instead, Defendant contends that basing his sentence in part on that status violated his constitutional rights because the prior convictions were neither pled in the indictment nor presented to a jury. Nevertheless, as acknowledged by Defendant and likewise recognized by this Court, the Supreme Court has previously overruled this argument. See Almendarez-Torres v. United States, 523 U.S. 224, 243-44 (1998); United States v. Cheek, 415 F.3d 349, 352-54 (4th Cir. 2005) (holding that prior convictions used as the basis for an armed career criminal sentence need not be charged in the indictment or proven beyond a reasonable doubt); United States v. Thompson, 421 F.3d 278, 284 n.4 (4th Cir. 2005) (observing that an indictment need not reference or list the prior convictions used to enhance a sentence). We find no error in the district court's determination that Defendant's prior convictions qualified him to be sentenced as an armed career criminal.

Likewise, the district court's extensive findings and statements on the record belie Defendant's assertion that the court failed to meaningfully consider the § 3553 factors or adequately connect them to the upward variance imposed. Following a lengthy hearing and substantial testimony and

15

documentation presented by the Government, the district court stated that it found the Government's evidence of Defendant's violent and criminal history, including his possible participation in several murders, to be credible. According to the district court, the evidence presented provided "very significant indication that this is a dangerous man, both in and outside of prison." J.A. 567.

Based on its findings of fact and summary of the evidence, the district court stated:

> [I]t is clear . . . that [Defendant] has no respect for the law, that virtually no sentence is going to be enough to get his attention to promote respect for the law, that he's repeatedly shown that both inside and outside of prison he has no respect for the law and has engaged in criminal behavior both behind bars and outside of prison.

J.A. 568-69. The court then outlined each of the § 3553 factors and gave some commentary concerning each, as it specifically related to Defendant. For example, with respect to the need for deterrence and for a sentence to protect the public, the district court highlighted the fact that Defendant had previously been released and immediately returned to criminal activity. As such, the district court observed that it saw "no way to protect the public from further crimes of this defendant without imposing a very significant jail sentence." J.A. 569.

Based on all of the § 3553 factors and Defendant's particular crimes and "horrific background"—"perhaps among the

16

worst [the district court] ha[d] seen"—the district court concluded that a sentence within the applicable Guidelines range would be "woefully" inadequate. J.A. 570-71. We can discern no abuse of discretion in this thoughtful, thorough, and detailed consideration of the § 3553 factors and Defendant's individual circumstances; indeed, this is an excellent example of the "sufficient justifications" required to support an unusually harsh upward variance from a sentence within the Guidelines range. Gall, 552 U.S. at 46. Defendant's sentence to the statutory maximum, though perhaps seemingly severe for the crime of possession of a box of ammunition, was procedurally reasonable.

For largely the same reasons, Defendant's argument that his sentence is substantively unreasonable must also fail. Nothing in the record or transcripts before us indicates that the district court did not "act[] reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." Hernandez-Villanueva, 473 F.3d at 123. The district court explained its reasons at length and confined that reasoning to the proper § 3553 factors, noting that "[t]his is one of those cases—it's a rare case indeed, but it's one of those cases . . . that if there ever were a case that would justify the maximum amount that Congress has authorized, this is that case." J.A. 571.

17

Giving the required due deference to this "reasoned and reasonable decision," Gall, 552 U.S. at 59-60, we find that Defendant's sentence was substantively reasonable.

Defendant's remaining constitutional arguments concerning his sentence have previously been considered and rejected by this Court. See, e.g., United States v. Grubbs, 585 F.3d 793, 798-803 (4th Cir. 2009) (consistent with the Fifth and Sixth Amendments, a district court may consider uncharged conduct in determining a sentence, so long as that conduct is proven by a preponderance of the evidence), cert. denied, 130 S. Ct. 1923 (2010); United States v. Powell, 650 F.3d 388, 391-93 (4th Cir. 2011) (holding that the Confrontation Clause does not apply at sentencing), cert. denied, 132 S. Ct. 350 (2011); United States v. Wilkinson, 590 F.3d 259, 269 (4th Cir. 2010) (noting that the Rules of Evidence do not apply at sentencing and that evidence is allowed with some minimal level of reliability).

In sum, we conclude that Defendant received a procedurally and substantively reasonable sentence that is free of error, constitutional or otherwise.

C.

Finally, Defendant argues that his right to due process was violated by the district court's denial of his opportunity to

review the materials produced by virtue of the subpoenas he issued prior to the sentencing hearing. We disagree.

At the outset, we note that although Defendant has framed this issue as a constitutional question requiring our de novo review, our precedent instead indicates that we review the denial of a Rule 17(c) subpoena for an abuse of discretion. United States v. Caro, 597 F.3d 608, 616 (4th Cir. 2010), cert. denied, 132 S. Ct. 996 (2012) (citing and relying on United States v. Fowler, 932 F.2d 306, 311-12 (4th Cir. 1991)); Fed. R. Crim. P. 17(c)(2) ("[T]he court may quash or modify the subpoena if compliance would be unreasonable or oppressive.").

In United States v. Nixon, the Supreme Court held that a movant for a Rule 17(c) subpoena must show that (1) the requested documents are evidentiary and relevant; (2) they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) the party cannot prepare for trial without having the documents in advance; and (4) the application is made in good faith and not as a general "fishing expedition." 418 U.S. 683, 699-700 (1974); see also Caro, 597 F.3d at 620 ("Accordingly, a defendant seeking a Rule 17(c) subpoena 'must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity.'" (quoting Nixon, 418 U.S. at 700)). If a movant fails to meet these requirements, then "the court may quash or modify the subpoena," as compliance in

19

those circumstances is deemed "unreasonable or oppressive," id., and "Rule 17(c) . . . is not a discovery device," United States v. Fowler, 932 F.2d 306, 311 (4th Cir. 1991) (citation omitted).

Here, Defendant issued subpoenas seeking the production of records pertaining to a certain inmate in the District of Columbia Department of Corrections and with the United States Marshal for the Eastern District of Virginia. This inmate testified at Defendant's sentencing about several murders and attempted murders in which Defendant was allegedly involved. The district court reviewed the records and found that they contained "little, if anything" that would be useful to the defense. J.A. 816.

Nevertheless, the district court ordered the Government to undertake the same review and identify any information that would fall under its discovery obligations or that might be relevant to Defendant's cross-examination of the witness. The Government complied with the order and in fact did provide some materials to Defendant that could potentially be used to attack the testifying inmate's credibility. Even so, Defendant contends that he was entitled to the remaining records as well so that he could "investigate" the Government's confidential sources prior to sentencing.

Defendant's request fails the "specificity" prong of the Nixon test on its face. Further, given that the district court

20

made reasonable efforts to accommodate Defendant, including allowing access to documents that were actually relevant and admissible, while also ensuring that the requirements of Rule 17(c) were met, we see no abuse of discretion in the district court's ruling. Rather, it seems a well-reasoned attempt to prevent an "unreasonable and oppressive" use of Rule 17(c).

## III.

In sum, we find no error in the district court's denial of Defendant's motion to suppress and conclude that the sentence imposed was procedurally and substantively reasonable and free of error, constitutional or otherwise. Likewise, we find no abuse of discretion in the district court's decision to limit Defendant's access to information obtained by Rule 17(c) subpoenas.

AFFIRMED