**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-4645**

_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

CLINT MONROE UTTER,

        Defendant - Appellant.

_____

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  John S. Kaull, Magistrate Judge.  (1:20-cr-00096-TSK-MJA-1)

_____

Submitted:  January 13, 2023                 Decided:  June 28, 2024

_____

Before GREGORY and HARRIS, Circuit Judges, and TRAXLER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:** Scott C. Brown, SCOTT C. BROWN LAW OFFICE, Wheeling, West Virginia, for Appellant.  William Ihlenfeld, United States Attorney, Wheeling, West Virginia, Sarah W. Wagner, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Clint Monroe Utter ("Utter") appeals the district court's denial of his objections to sentencing enhancements under the U.S. Sentencing Guidelines § 2B3.1 for brandishing a firearm, abduction, and carjacking. Finding no error, we affirm.

I.

Utter pleaded guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a) and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). During the plea hearing, the government presented a proffer to establish the factual basis for the guilty plea. Utter confirmed that the proffer was "substantially correct." J.A. 51. According to that proffer, bank surveillance video and eyewitness testimony showed that an individual, who was later identified to be Utter, "entered the Summit Community Bank in Salem, West Virginia, through the employee entrance" and robbed the bank. J.A. 35. The surveillance footage showed Utter carrying what appeared to be a firearm. Utter used zip ties to bind three bank employees and ordered Penny Ash ("Ash"), another bank employee, "at gunpoint, to give him money from the bank's drawers." *Id*. Still holding her at gunpoint, Utter ordered Ash to the vault where the bank stored its money and directed Ash to place the money in a trash bag. To facilitate his escape, Utter then demanded that the bank manager, Joan Nutt ("Nutt"), give him her car keys. He fled the scene in Nutt's car with $69,100 in stolen cash.

The government also included statements given by a witness named Richie Starkey ("Starkey") who was in the car with Utter when Utter was arrested. Starkey told officers

that he had two of Utter's firearms which he had taken from an allegedly suicidal Utter just days before the arrest. According to the officers, one of those firearms was "an old-style revolver" that appeared to be consistent with the one used by the robber on the bank's surveillance video. J.A. 39.

The probation office recommended three sentencing enhancements in the Presentence Investigation Report: a five-level enhancement under U.S.S.G. § 2B3.1(b)(2)(C) for brandishing a firearm; a four-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(4)(A) for abduction during the commission of a robbery; and a two-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(5) for carjacking during the commission of a robbery. Utter objected to each enhancement before the sentencing hearing. During the hearing, the government presented evidence in support of the enhancements. That evidence included testimony from FBI Special Agent James Wisniewski ("Wisniewski"), bank surveillance video footage of the robbery, and a report Wisniewski prepared during his investigation.

Regarding the brandishing enhancement under U.S.S.G. § 2B3.1(b)(2)(C), Wisniewski testified that the surveillance footage showed Utter following Ash with what appeared to be a firearm in his hands.

In support of the abduction enhancement under U.S.S.G. § 2B3.1(b)(4)(A), Wisniewski testified that he, other agents, and defense counsel went to the bank and measured the total distance that Utter forced Ash to travel at gunpoint during the robbery. Penny Ash was present during Wisniewski's visit and advised him of her movements during the robbery. First, Utter confronted Ash at the back door and then took her to the teller's

3

counter, a distance of "approximately 28 feet." J.A. 148. Next, Utter took Ash from the teller's counter to the manager's office, a distance of "approximately 35 feet." *Id.* Then, Utter took Ash from the manager's office back to the teller's counter, an additional 35 feet. *Id.* Finally, Utter ordered Ash from the teller's counter to a chair inside of the bank vault, approximately 23 feet. *Id.* In sum, Utter forced Ash to travel approximately 121 feet throughout the bank at gunpoint. Wisniewski detailed his findings in a report titled "Measurements of Clinton Utter's movements with Penny Ash" which the government introduced as an exhibit. J.A. 148, 168 n. 2.

In support of the carjacking enhancement under U.S.S.G. § 2B3.1(b)(5), Wisniewski testified that the surveillance footage showed that Utter took Joan Nutt's car keys during the robbery. According to Wisniewski, Utter had trouble finding Nutt's keys in her purse himself, so he directed Ash to take the purse to Nutt to retrieve the keys.

The district court denied Utter's objections to the sentencing enhancements. In response to the objection to the firearm enhancement, the district court reasoned that the footage showed Utter holding what appeared to be a firearm. Additionally, the district court noted that one of Utter's guns that Starkey gave to law enforcement was consistent with what Utter was holding in the surveillance footage. The district court also noted that one of Utter's codefendants stated that Utter admitted to using a firearm during the robbery, and that the codefendant saw a revolver in a blue and white cooler that Utter stored the stolen cash in after the robbery. The court also noted that Ash reported that Utter carried a firearm during the robbery. The district court ultimately found that this level of

4

corroboration paired with Wisniewski's testimony supported the application of the brandishing enhancement under U.S.S.G. § 2B3.1(b)(3)(C).

In response to the objection to the abduction sentencing enhancement, the district court cited to Wisniewski's testimony, the surveillance footage, and the FBI Report to note that Ash "walked approximately 121 feet" to various locations throughout the bank at Utter's direction. JA. 168. The court highlighted one location, the vault, which it described as a "separate room . . . disconnected by a locked door which requires two bank employees to enter a unique code to access the secured area." J.A. 168–69. Based on those facts, the court found that a preponderance of the evidence demonstrated that Utter accompanied Ash by force to a different location as required to apply the enhancement.

In response to Utter's objection to the carjacking sentencing enhancement, the district court reasoned that surveillance footage showed, and the parties agreed, that Utter ordered Nutt to give him her car keys. The court cited to Wisniewski's testimony that Utter had what appeared to be a firearm in his hand at the time he gave that order. Relying on the Sixth Circuit's decision in *United States v. Boucha*, 236 F.3d 768 (6th Cir. 2001), which likened the carjacking sentencing enhancement to the federal carjacking statute, the court found that the enhancement was appropriate because it was clear that Nutt surrendered her car keys because "Utter was standing over her with a gun in his hand" and that she would not have given Utter her keys "absent the violence and intimidation" he subjected her to. J.A. 171.

The court therefore rejected all of Utter's objections. It determined that Utter fell into criminal history category I and calculated Utter's total offense level as 36, making the applicable sentencing guideline range 188 months to 235 months. The court sentenced

5

Utter to 188 months incarceration on each of counts one and two, to be served concurrently. Utter timely appealed.

## II.

A district court's improper calculation of the guidelines range renders the sentence procedurally unreasonable and subject to vacatur. *United States v. Hargrove*, 701 F.3d 156, 161 (4th Cir. 2012). We review challenges to a court's application of the guidelines for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). In doing so, we review the court's factual findings for clear error and its legal conclusions de novo. *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006).

## III.

Utter was sentenced on November 5, 2021, so we assess his challenges under the 2021 Guidelines Manuel which was in effect at that time. The issues pending before us on appeal are: (1) whether the district court properly applied a five-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(C) for possessing a firearm; (2) whether the district court properly applied a four-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(4)(A) for abduction; and (3) whether the district court properly applied a two-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(5) for carjacking. We consider each in turn.

## A.

Under the 2021 Sentencing Guidelines, a defendant was subject to a five-level sentencing enhancement "if a firearm was brandished or possessed" during a robbery. U.S.S.G. § 2B3.1(b)(2)(C). The guidelines define firearm as "any weapon (including a

6

starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." U.S.S.G. § 1B1.1 cmt. n. 1(H). "A weapon, commonly known as a 'BB' or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm." *Id.*

Utter concedes that it is undisputed that he possessed "something which appeared to be a firearm" during the robbery. Opening Br. at 7. Nevertheless, he challenges the district court's application of the five-level brandishing enhancement on the grounds that the court did not conclusively determine that the object he carried was indeed a firearm. According to Utter, the district court should not have relied on the employee eyewitnesses' statements identifying the object as a gun because the bank employees "were not firearm experts" and therefore could not conclusively state that the item Utter had during the robbery was a firearm as defined under the guidelines. *Id*. Utter also contends that the court erred in relying on statements from his codefendant and Starkey, who were not present during the robbery, because their statements were not subject to cross examination.

We find neither of these arguments persuasive. We rejected an argument like Utter's first in *United States v. Jones*, where the appellants contended that the evidence was insufficient to sustain their 18 U.S.C. 924(c) because the government did not proffer expert testimony to establish that the appellants used a firearm. 907 F.2d 456, 460 (4th Cir. 1990). We held that expert testimony was not necessary, and that the testimony from five eyewitnesses that a firearm was used during the robbery was enough for a jury to find the appellants guilty beyond a reasonable doubt. *Id*. Similarly, in *United States v. Fields*, we held that the evidence was sufficient to sustain the appellant's conviction where the

7

government established that the defendant possessed firearms through eyewitness testimony.  No. 00-4119, 2000 U.S. App. LEXIS 23337, at *2 (4th Cir. Sept. 15, 2000).

Here, bank employees provided consistent accounts of Utter's conduct during the robbery, including the insistence that he carried a firearm.  As noted above, we said in *Jones* and *Fields* that eyewitness statements that perpetrators used firearms during their crimes was sufficient to sustain the challenged convictions where the government was required to prove use of a firearm beyond a reasonable doubt.  *See Jones*, 907 F.2d at 460 ("[T]he only evidence that a firearm was used came from the testimony of witnesses unfamiliar with firearms and from bank photographs."); *Fields*, 2000 U.S. App. LEXIS 23337, at *2 (similar).  It logically follows that eyewitness statements are sufficient to apply the sentencing enhancement here given that the government need only satisfy the preponderance-of-the-evidence burden.  *See McClinton v. United States*, 143 S. Ct. 2400, 2402 (2023) (burden at sentencing).

Utter's argument that the district court erred when it considered statements from his codefendant and Starkey is similarly unpersuasive.  The Confrontation Clause does not apply at sentencing.  *See United States v. Powell*, 650 F.3d 388, 392 (4th Cir. 2011).  Rather, the guidelines demand only that the evidence on which the court relies has "sufficient indicia of reliability to support its probable accuracy."  *Id.* at 394 (quoting U.S.S.G. § 6A1.3(a)).

That test is met here.  Utter's codefendant, Starkey, and the bank employees all stated that Utter carried a firearm during the robbery.  One of Utter's guns that Starkey gave to police appears consistent with the object Utter is seen carrying during the robbery on the surveillance video.  And, if there was any doubt, Utter's own recorded statement to an undercover agent where he described himself as being "a man with a gun in a robbery

8

in progress," J.A. 80, confirmed that he brandished a firearm while he robbed the bank. This level of corroboration outweighs any concern that Utter's codefendant or Starkey lied for personal gain which is generally the concern where witness statements are not subject to cross examination. The district court therefore did not err in considering statements from Starkey and Utter's codefendant and had sufficient evidence to apply the brandishing enhancement.

### B.

The 2021 Sentencing Guidelines authorized a court to apply a four-level increase to a defendant's offense level if "any person was abducted to facilitate commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(A). A person is "abducted" if she "was forced to accompany an offender to a different location." U.S.S.G. § 1B1.1 cmt. n. 1(A), U.S.S.G. § 2B3.1(b)(4)(A).

What is meant by "a different location" may vary depending on the circumstances of a given case and thus should not be mechanically determined based on the presence or absence of any particular factor. Thus, in assessing whether a victim was moved to a different location courts must conduct a case-by-case determination of the relevant facts to determine whether the enhancement applies. Notably, the offender need not move the victim a great distance for the enhancement to apply. *United States v. Osborne*, 514 F.3d 377, 389 (4th Cir. 2008).

In *Osborne*, for example, we upheld the application of the abduction enhancement even though the victim was moved only within the confines of a single building. *Id.* In that case, the offender, armed with a knife, directed the victim from the pharmacy section

9

of the store, which was located behind a secure door, to the front door. *See id*. at 382, 389. We held that the enhancement applied because the front door where the offender moved the victim to was a different location from behind the secure door in the pharmacy section where they began, and the victim indicated that she complied with the offender's commands because she was afraid not to. *Id*.

Our rationale in *Osborne* is equally applicable in this case. The district court found that Utter escorted Ash from the teller's counter to the bank vault which was behind a secure door. The door to the vault was closed before Ash and another employee entered their codes to open it. Utter than accompanied Ash inside the vault and forced her to sit in a chair where he left her. Like in *Osborne*, the "closed, secure, locked door" here established a threshold to a different location from the teller area where the other employees remained. J.A. 99. Thus, in ordering Ash into the vault, Utter forced Ash to accompany him to an area where she was isolated from the other bank employees in an entirely different location within the bank.

Despite these similarities, Utter contends that *Osborne* is distinguishable because the offender in that case led employees "on a winding course through its aisles," while Utter simply took Ash into the vault and left her inside. Opening Br. at 13. Thus, he argues that the sentencing enhancement should not apply because he did not "create a possible hostage situation" by moving Ash "toward the entrance of the bank." *Id.* We have recognized that the enhancement was "intended, at least in part, to protect victims against the additional harm that may result from being forced to accompany an offender, such as being taken as a hostage during a robbery or being isolated to prolong a sexual assault."

*Osborne*, 514 F.3d at 387 (citations omitted).  Utter's argument here makes much of the latter portion of our recognition and ignores the former—that the enhancement seeks to protect against any harm that may result from being forced to accompany an offender. Thus, while hostage situations are one type of the harms the enhancement seeks to protect victims against, a hostage situation is not necessary for the enhancement to apply.  The enhancement is also appropriate where, as here, the offender takes a victim to another location at gunpoint, even if the offender leaves the victim in the new location alone.

C.

The Sentencing Guidelines authorize a district court to increase a defendant's offense level by two levels if the underlying offense involved a carjacking.  U.S.S.G. § 2B3.1(b)(5). The guidelines make clear that "the taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation" constitutes a carjacking.  U.S.S.G. § 2B3.1 cmt n. 1.  However, they do not explicitly address the situation presented here where an offender takes car keys, but not the car itself, from the immediate presence of the victim.  We have not yet addressed this scenario but find the conclusions reached by the Sixth Circuit in *United States v. Boucha*, 236 F.3d 768 (6th Cir. 2001), and the Seventh Circuit in *United States v. Rogers*, 777 F.3d 934 (7th Cir. 2015), persuasive.

In *Boucha*, the court highlighted that the phrase "person or presence" used in U.S.S.G. § 2B3.1(b)(5) mirrors the language used in 18 U.S.C. § 2119, the federal carjacking statute, and thus looked to cases interpreting that phrase as used in the statute for guidance.  *Id*. at 771.  The court noted that several circuits interpreting the phrase in the statutory context "found a carjacking violation had occurred even though the charged

11

defendant took the keys from the victim while the victim was away from his or her car." *Id.* Seeing no reason to deviate from that interpretation of the phrase in the guidelines context, the Sixth Circuit held that an offender who uses force or intimidation to take a victim's keys is subject to the carjacking enhancement. *Id.* at 776.

The Seventh Circuit reached a similar conclusion in *Rogers* in assessing whether "keyjacking" met the guidelines' "person and presence requirement." *Rogers*, 777 F.3d at 936–37. The *Rogers* defendant contended that the district court should not have applied the enhancement because he obtained the victim's car keys by "rummaging through" her purse, not her person. *Id.* at 936–37. The Seventh Circuit defined "presence" to include "ability to retain control of the vehicle through possession of the keys." *Id.* at 936. It therefore held that "there is no distinction—other factors notwithstanding—between taking a victim's car outright and taking a victim's keys as merely the first action in the seizure of her car." *Id.*

In agreement with the Sixth and Seventh Circuits, we similarly hold that the carjacking sentence enhancement applies where the offender uses force or intimidation to take a victim's car keys from her possession. Applying that standard to the facts of this case, we cannot say that the district court erred in applying the carjacking enhancement here. Wisniewski testified that Utter attempted to retrieve Nutt's car keys from her purse but could not locate them on his own and then directed Ash to take the purse to Nutt so that Nutt could locate the keys for him. The district court found that the surveillance video showed that Utter ordered Nutt to give him her car keys and that the parties had agreed to that fact. The court also found that "Utter obviously had a weapon or a firearm but certainly something that

12

instilled fear in everyone in that bank, including Ms. Nutt." J.A. 104.  These facts sufficiently support the court's conclusion that Utter took Nutt's car keys by force or intimidation.

IV.

For the reasons set forth above, we affirm the district court's application of all three sentencing enhancements.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in the decisional process.

*AFFIRMED*