

**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## DUAYNE RICHARD PETERS,
Defendant-Appellant.

Supreme Court Case No. CRA23-008
Superior Court Case No. CF0112-20

## OPINION

## Cite as: 2025 Guam 1

Appeal from the Superior Court of Guam
Argued and submitted on July 15, 2024
Hagåtña, Guam

Appearing for Defendant-Appellant
Joshua D. Walsh, *Esq.*
Razzano Walsh & Torres, P.C.
139 Murray Blvd., Ste. 100
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee
Christine Santos Tenorio, *Esq.*
Assistant Attorney General
Office of the Attorney General
590 S. Marine Corps Dr., Ste. 801
Tamuning, GU 96913



**E-Received**
6/20/2025 11:05:44 AM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

[1]     Defendant-Appellant Duayne Richard Peters appeals his conviction for four counts of First-Degree Criminal Sexual Conduct ("CSC I") and two counts of Second-Degree Criminal Sexual Conduct ("CSC II"), along with two Vulnerable Victim Special Allegations.  Peters argues that the trial court committed reversible error when it allowed his wife to plead guilty and testify against him pursuant to a plea agreement that placed her under a strong compulsion to testify in a particular manner.  He argues that despite his wife admitting to abusing the victim, she "testified at the insistence of the Government . . . that the abuse was committed by Mr. Peters."  Appellant's Br. at 9 (May 13, 2024).  Peters also makes the claim he received ineffective assistance of counsel. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]     A grand jury returned an indictment against Peters and his wife,[1] N.P., for criminal sexual conduct committed against a girl related to N.P.  Peters was initially charged with five counts of CSC I and three counts of CSC II.  N.P. was charged with two counts of CSC I and two counts of CSC II under a theory of complicity.  The criminal sexual conduct was alleged to have occurred when the victim was under the age of fourteen.  N.P. was alleged to have admitted to police that there was an incident where Peters had sex with her and then with the victim, and another incident where she watched Peters penetrate the victim with a vibrator.  Super. Ct. Case No. CF0112-20-01 (Magis.'s Compl. at 5, Feb. 17, 2020).[2]

---

[1] N.P. testified that she married Peters in 2017 and was still married to him at the time of trial.

[2] Although outside the record of this appeal, we can properly take judicial notice of documents filed in N.P.'s case.  *See People v. Tedtaotao*, 2023 Guam 21 ¶ 2 n.1.  In our discretion and without request, we take judicial notice

**[3]**     Peters moved to sever, based in part on (1) his claim that N.P. had made incriminating statements which also implicated him and (2) his claim that while he denied the alleged acts had occurred, she had "admitted to it." Record on Appeal ("RA"), tab 19 at 1–3 (Mot. Sever, Apr. 10, 2020). The unopposed motion was granted, and the prosecution against N.P. was captioned as CF0112-20-01. A jury was selected for N.P.'s trial, but before being empaneled, it appears N.P. reached a plea agreement with the People. *See* CF0112-20-01 (Min. Entry at 2, Dec. 16, 2020); Appellee's Br. at 2 (June 12, 2024). N.P. agreed to plead guilty to Criminal Facilitation of First-Degree Criminal Sexual Conduct (as a Third-Degree Felony). CF0112-20-01 (Plea Agreement at 2, Feb. 1, 2021). In exchange for her cooperation against Peters, N.P. was given immunity, all other charges were dropped, and the People agreed to a sentence of time served. *Id.* at 3–5.

**[4]**     N.P.'s plea agreement provided that "Defendant agrees to fully and truthfully cooperate with the Government of Guam Attorney General's Office . . . ." *Id.* at 3. The agreement further stated that:

> Defendant agrees to testify truthfully at any Court proceeding, including grand jury, trial or any other hearing to which he [sic] is called to testify, specifically concerning her own case or those involving her co-actor pursuant to Guam Police Department Report No. 19-06305 and written statement and/or testimony against her co-actor, Duayne Richard Peters, at trial.

*Id.* at 3–4 (emphasis removed). Another agreement term required N.P. to "cooperate with the Government against" Peters by submitting a written statement. *Id.* at 5. The Superior Court held a change-of-plea hearing where it accepted N.P.'s guilty plea. Transcript ("Tr.") at 9 (Change of Plea Hr'g, Jan. 26, 2021). At the hearing, N.P.'s attorney stated:

---

of this and certain other court records under Guam Rule of Evidence 201(b)(2)–(c), as they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Tedtaotao*, 2023 Guam 21 ¶ 2 n.1 (citation omitted). A plea agreement serves as an admission of the factual circumstances underlying the crime; thus, except for the facts underlying N.P.'s guilty plea, we take judicial notice of charging documents in N.P.'s criminal case "not for the truth of the matters asserted," but to establish "the fact of their existence." *See id.* ¶¶ 2 n.1, 4 n.2.

> In discussions with my client, she is voluntarily, and willing, and eager to assist in the prosecution of Mr. Duayne Peters. However, we do know that Mr. Peters has certain rights that he may assert at trial and we'd just like to say for the record that, notwithstanding any impediment that his legal rights would cause to [N.P.] doing her part of the bargain, she's willing and in good faith will do anything the government requests.

*Id.* at 8. The People explained to the court that "the reason why [N.P.] was offered this generous plea agreement was because her cooperation is vital to Mr. Peters'[s] trial." *Id.* The People also asked the court to remove its no-contact order, at the victim's request, which the court observed was "[s]o rare, I've never seen it before in all my years on the Bench." *Id.* at 11.

[5]     At a pretrial conference on July 16, 2021, Peters's attorney ("original counsel") informed the court of "issues that affect[] counsel's ability to move . . . forward" and subsequently moved to withdraw from the case. Tr. at 3 (Pre-Trial Conf., July 16, 2021); RA, tab 57 at 1 (Mot. Withdraw, July 26, 2021). At the next pretrial conference, the trial court stated it was inclined to grant the motion and was primarily concerned with calendaring the matter, including allowing replacement counsel adequate time to prepare. *See* Tr. at 6–7 (Pre-Trial Conf., July 20, 2021). The prosecutor stated that "[a]s far as evidence goes, Your Honor, it's not . . . going to take that long for the new defense counsel to peruse the evidence. There is some stuff available for inspection at my office, as far as physical evidence . . . ." *Id.* at 6. Although original counsel moved to withdraw, he informed the court that he would continue to appear until Peters was able to hire a new attorney. Not until the May 11, 2022, pretrial conference was the court informed that a new firm would be taking over the case. A new attorney ("new co-counsel") entered a formal appearance as co-counsel eight days before trial. Ultimately, original counsel did not withdraw from representing Peters, but new co-counsel was the lead attorney at trial.

[6]     During their investigation, the People seized eight journals belonging to the victim. The People received the journals as evidence on January 21, 2021. The People claim, without citation

to the record, that Peters's original counsel was notified of these journals on January 25, 2021, via e-discovery. Appellee's Br. at 3. The People did not list the journals as exhibits when they filed their list of trial exhibits. *See* RA, tab 51 at 2–5 (Ex. List, July 15, 2021). At the May 11, 2022, pretrial conference, an attorney from the new firm handling Peters's case mentioned the journals and suggested that the trial court may need to review them *in camera* for exculpatory evidence. The court responded, "I'll do what you guys need me to do." Tr. at 3 (Pre-Trial Conf., May 11, 2022). The prosecutor stated that there was "some inculpatory information in some of those journals," and arrangements could be made to share that information with defense counsel. *Id.*

[7] At trial, the People conducted a direct examination of the victim with no reference to the journals. After the direct examination of the victim, new co-counsel explained to the court during a sidebar that he had received the victim's journals only recently and requested cross-examination be postponed until the following day to review them. With no objection from the prosecution, the court granted the defense's request and released the jury for the day. The next day, new co-counsel cross-examined the victim without referring to the journals. The People did not refer to the journals throughout the trial.

[8] Ultimately, six counts of CSC I and two counts of CSC II were submitted to the jury, along with four vulnerable-victim special allegations.[3] The jury returned a guilty verdict on all charges. Following the guilty verdicts, the trial court granted the People's motion for judgment of acquittal on two counts of CSC I and their corresponding special allegations. The trial court entered a judgment of conviction for four counts of CSC I, two counts of CSC II, and two special allegations. The court sentenced Peters to 30 years of imprisonment. Peters timely appealed.

---

[3] A superseding indictment was returned against Peters adding six new counts of CSC I. At the close of the People's case in chief, they amended the superseding indictment to conform to the evidence presented, resulting in dismissal of five counts of CSC I and one count of CSC II.

## II. JURISDICTION

**[9]**     This court has jurisdiction over an appeal from a final judgment of the Superior Court of Guam. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-18 (2025)); 7 GCA §§ 3107(b), 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III. STANDARD OF REVIEW

**[10]**     "Waiver of a right precludes the issue from appellate review, while a forfeiture is subject to plain error review." *People v. Santos*, 2021 Guam 12 ¶ 22. "When a defendant fails to object to an alleged error at trial, we review for plain error." *People v. Libby*, 2021 Guam 27 ¶ 15; *United States v. Strickland*, 245 F.3d 368, 375 (4th Cir. 2001) (applying plain error review to unpreserved due process argument). We have established that under plain error review, "[w]e will not reverse unless (1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process." *People v. Mendiola*, 2023 Guam 12 ¶ 16 (quoting *People v. Quitugua*, 2009 Guam 10 ¶ 11). Thus, "[a] challenge to the validity of a guilty plea not raised in the trial court is reviewed for plain error." *People v. Manley*, 2010 Guam 15 ¶ 12. Additionally, "even constitutional errors are reviewed for plain error when not raised at trial." *People v. Wesen*, 2022 Guam 18 ¶ 14.

**[11]**     "Ineffective assistance of counsel claims are mixed questions of law and fact, which we review *de novo*." *People v. Cruz*, 2023 Guam 1 ¶ 7 (quoting *People v. Guerrero*, 2017 Guam 4 ¶ 18).

//

//

//

## IV.  ANALYSIS

### A.  Peters Fails to Show that the Superior Court's Acceptance of N.P.'s Plea Agreement Was Plain Error

[12]    Peters argues that the Superior Court should not have accepted N.P.'s plea agreement because its terms placed her under a strong compulsion to testify in a particular manner against him.  Appellant's Br. at 11.  The People respond that Peters lacks "standing" and the plea agreement itself did not compel specific testimony, only truthful testimony.  Appellee's Br. at 11, 19.  Because the validity of N.P.'s plea agreement was not raised in the trial court, we review for plain error.  *See Manley*, 2010 Guam 15 ¶ 12.

[13]    This court has held that "principles of contract law are useful in analyzing plea agreements, even though such principles cannot always be rigidly applied in the criminal law context."  *People v. Tedtaotao*, 2023 Guam 21 ¶ 21 (quoting *People v. Piyelit*, 2022 Guam 16 ¶ 43).  As an initial matter, we must distinguish between the jurisdictional inquiry we have called "traditional standing"[4] and the merits inquiry of whether a person can sue on a contract or "contractual standing."  Traditional standing asks whether the court has the power to hear the case; contractual standing asks whether the party states a valid claim on which relief can be granted.  *See, e.g.*, *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020) ("Contractual standing is distinct from Article III standing and does not implicate subject-matter jurisdiction.  Article III standing speaks to the power of a court to adjudicate a controversy; contractual standing speaks to a party's right to relief for breach of contract."); *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (per curiam) (holding arguments that a plaintiff lacks "contractual standing"

---

[4] "We have referred to these 'traditional standing requirements' as 'constitutional standing.' . . .  Though this court is not an Article III court constitutionally bound to require parties to establish standing, we nevertheless have adopted 'traditional standing requirements' based on Article III princip[les] . . . ."  *In re Leon Guerrero*, 2023 Guam 11 ¶ 18 (citations omitted).

do not "go to the court's subject matter jurisdiction, but are instead part of the inquiry into the merits of a particular claim"); *cf. Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000) ("Requiring the plaintiff to show actual environmental harm as a condition for standing confuses the jurisdictional inquiry (does the court have power under Article III to hear the case?) with the merits inquiry (did the defendant violate the law?).").

[14]    For example, it is often said that "[o]nly a party to the contract, one in privity with a party to the contract, or a third-party beneficiary of the contract has standing to sue on a contract." *E.g.*, *Stop NorthPoint, LLC v. City of Joliet*, 2024 IL App (3d) 220517, ¶ 70 (quoting *Haake v. Bd. of Educ. for Twp. High Sch. Glenbard Dist. 87*, 925 N.E.2d 297, 306 (Ill. App. Ct. 2010)). But that a court generally may not provide relief to a non-party to a contract does not deprive it of jurisdiction over contract claims. *See In re Allegheny Health, Educ. & Rsch. Found.*, 383 F.3d 169, 176 (3d Cir. 2004) ("The existence of subject matter jurisdiction is determined before, not after, adjudication of the merits and depends on the nature, not the validity, of the plaintiff's claim.").

[15]    A defendant may be able to challenge the plea agreement of a co-defendant on the grounds it is void for violating public policy because the consideration was illegal, or the parties wrongfully intended to do him harm. *See Koenig v. Warner Unified Sch. Dist.*, 253 Cal. Rptr. 3d 576, 586 (Ct. App. 2019) (stating it is "well settled" in California that contracts in violation of public policy are "considered void"); *see also* 7 Williston on Contracts § 16:14 (4th ed. (May 2025 Update)) ("In general, a bargain which contemplates a wrong to a third person . . . is illegal."); *U.S. Consol. Seeded Raisin Co. v. Griffin & Skelley Co.*, 126 F. 364, 371 (9th Cir. 1903) ("[A] contract legal in its terms and in its consideration may be rendered illegal, as against public policy, by reason of the intention of the parties thereto at the time of entering into it to so use it as thereby to commit civil

injury to third persons . . . ."); *State v. Byrnside*, 795 So. 2d 435, 438 (La. Ct. App. 2001) (holding that contracts in violation of public policy—including plea agreements—can be nullified by any person or by a court on its own initiative).

[16]     However, we need not resolve whether Peters has "contractual standing" to challenge N.P.'s plea agreement.  Even if Peters has contractual standing to challenge the validity of a plea agreement, Peters articulates no basis for finding the plea agreement void.  Peters seems to suggest there is something inherently unfair about the agreement because N.P. "admitted to knowingly abusing the victim but testified at the insistence of the Government—in exchange for accepting no jail time plea agreement—that the abuse was committed by Mr. Peters."  *See* Appellant's Br. at 9; *id.* at 13 ("Despite the severity of her alleged involvement, the terms of her agreement were notably lenient: in exchange for her testimony against Mr. Peters, she would receive no further incarceration time.  This agreement starkly contrasted with the potential penalties typically associated with such serious charges." (citation omitted)).  However, a plea agreement that allows a defendant charged with committing a first-degree felony via complicity to plead guilty to facilitating that offense is not based on illegal consideration.  The criminal facilitation statute itself contemplates that facilitation of a first-degree felony is a third-degree felony, subject to a less severe penalty.  9 GCA § 4.65 (2005).  No matter how lenient or generous the agreement was, the sentence N.P. received was not below the statutory minimum and was not unlawful.  *See, e.g.*, *Byrnside*, 795 So. 2d at 438 ("[A] plea bargain, which attempted to afford a defendant an illegally lenient sentence in that it allowed for a suspended sentence for a third-felony offender, was an absolute nullity which could not be confirmed on appeal. . . .  [I]t was not in society's best interest to uphold a plea bargain that afforded an illegally lenient sentence.").  Additionally, the plea agreement only required N.P. to testify truthfully.  *See* CF0112-20-01 (Plea Agreement at 3–4).

This was not an agreement where the consideration was illegal or where the parties wrongfully intended to do Peters harm.

[17]    Furthermore, even if the agreement were void, it does not necessarily follow that the remedy would have been to suppress N.P.'s testimony. *See People v. Bannister*, 923 N.E.2d 244, 249–50 (Ill. 2009) ("[E]ven if he had standing to contest the validity of the agreement, its validity would not affect its admissibility. That is, even if the trial court, in the case against the defendant, had somehow found a reason to reach the validity of [co-defendant's] plea agreement—an agreement that was still executory and had yet to be accepted by the trial court—and invalidated it, the remedy would not have been to suppress his testimony."). We find no error.

## B. Peters Fails to Show His Right to a Fair Trial Was Violated

[18]    A defendant can generally challenge a co-defendant's testimony on due process grounds. *See Bannister*, 923 N.E.2d at 250 ("[E]ven though the defendant lacks standing to challenge the validity of the agreement, he does not lack the ability to challenge [co-defendant]'s testimony. . . . The issue, then, becomes whether the plea agreement itself so undermined [co-defendant]'s credibility that we must conclude the defendant was denied a fair trial."). Peters argues that the nature of the plea agreement and N.P.'s subsequent testimony violated his right to a fair trial. Appellant's Br. at 12. The People contend Peters "has waived his right to challenge [N.P.]'s testimony as coercive because he did not object to her testimony at the trial court level." Appellee's Br. at 13. They also argue that, assuming this issue is not waived, the plea agreement did not require N.P. to testify in a predetermined manner but merely required truthful testimony, thus not violating Peters's right to a fair trial. *Id.* at 13, 19. Although we reject the People's argument that this issue cannot be reviewed on appeal, we conclude Peters failed to meet his burden on plain error review.

### 1. This is a case of forfeiture, not waiver

[19] We have recently encouraged practitioners before this court to begin using the terms "forfeiture" and "waiver" advisedly. *In re Application of the People*, 2024 Guam 17 ¶ 21 n.4. The People's usage of the term "waived" is consistent with the proper distinction between these two terms. *Compare* Appellee's Br. at 13 ("[T]he issue is not cognizable on appeal." (quoting *People v. Hillhouse*, 40 P.3d 754, 767 (Cal. 2002)), *with Santos*, 2021 Guam 12 ¶ 22 ("Waiver of a right precludes the issue from appellate review . . . ."). However, the People's waiver argument lacks essential context because the California Supreme Court has generally rejected the concept of plain error review. *People v. Dykes*, 209 P.3d 1, 29 (Cal. 2009). It is misleading to argue that this court cannot address a defendant's claim by citing case law from a jurisdiction that does not recognize plain error review of forfeited claims.

[20] We reiterate that "[a] true waiver occurs only through an *intentional* relinquishment of an argument, while a forfeiture is the result of a *neglectful* failure to pursue an argument." *People v. Towai*, 2024 Guam 9 ¶ 18 (quoting *People v. Chong*, 2019 Guam 30 ¶ 10). By selectively citing language from inapposite California cases that support their desired outcome, "the People seem to be lawyering by headnote." *See People v. Hosei*, 2023 Guam 22 ¶ 42; *cf. In re Est. of Perez*, 2005 Guam 27 ¶ 31 n.11 ("In the *absence of* binding precedent . . . , this court has held California case law to be persuasive authority . . . ." (emphasis added)). Peters argues, "[T]he record shows no effort by Mr. Peter[s]'s trial counsel to . . . prevent his wife from . . . testifying . . . ." Appellant's Reply Br. at 2–3 (June 26, 2024). This inaction can hardly be characterized as intentionally abandoning a known right. *See Chong*, 2019 Guam 30 ¶ 10; *Piyelit*, 2022 Guam 16 ¶ 23. This is a case of forfeiture because "[f]orfeiture occurs through neglect or accident." *People v. Quinata*, 2023 Guam 25 ¶ 32 n.4. We therefore review for plain error. *See Mendiola*, 2023 Guam 12 ¶ 16.

### 2. Peters fails to show that an error occurred

[21]     On plain error review, Peters bears the burden of showing an error occurred. *See Hosei*, 2023 Guam 22 ¶ 35. He claims that "the [a]cceptance of the Co-Defendant's Plea Agreement, and her subsequent testimony, [v]iolated Mr. Peters'[s] Right to a Fair Trial." Appellant's Br. at 12. We conclude that Peters has failed to meet his burden on this point.

[22]     Even though plea agreements that contain terms requiring testifying against an accomplice create a risk of perjury, *e.g.*, *United States v. Dailey*, 759 F.2d 192, 198 (1st Cir. 1985), courts have uniformly held such agreements are proper if certain relevant procedural safeguards are met, *e.g.*, *id.* at 194; *see also People v. Homick*, 289 P.3d 791, 829–30 (Cal. 2012). In cases when an accomplice has struck a plea agreement, "the 'established safeguards' are that the jury be informed of the exact nature of the agreement, that defense counsel be permitted to cross-examine the accomplice about the agreement, and that the jury be specifically instructed to weigh the accomplice's testimony with care." *Dailey*, 759 F.2d at 196.

[23]     The California Supreme Court's reasoning on this issue is persuasive. In *People v. Allen*, 729 P.2d 115 (Cal. 1986) (in bank), the court concluded, "[W]hen the accomplice is granted immunity subject to the condition that his testimony substantially conform to an earlier statement given to police, or that his testimony result in the defendant's conviction, the accomplice's testimony is 'tainted beyond redemption' and its admission denies the defendant a fair trial." *Id.* at 130–31 (citations omitted). In *People v. Homick*, 289 P.3d 791 (Cal. 2012), the California Supreme Court elaborated that terms of a plea agreement violate the principle of a defendant's right to a fair trial "when the agreement requires the witness to testify to prior statements 'regardless of their truth,' but not when the truthfulness of those statements is the mutually shared understanding of the witness and the prosecution as the basis for the plea bargain." *Id.* at 830

(citation omitted). The court noted that a plea agreement requiring a witness testify in a "truthful and honest and accurate" manner does not require that he testify in conformity with his statement to police. *Id.* Thus, "even if it is clear the prosecutor believes the witness's prior statement to the police is the truth, and deviation from that statement in testimony may result in the withdrawal of the plea offer," the agreement "does not place such compulsion upon the witness as to violate the defendant's right to a fair trial." *People v. Anderson*, 420 P.3d 825, 851 (Cal. 2018) (citation omitted). A plea agreement is not improperly coercive unless it "is expressly contingent on the witness sticking to a particular version" of events while testifying. *Id.*

[24]     Here, the "established safeguards" were followed. *See Dailey*, 759 F.2d at 196. The jury was informed of the nature of the agreement, including that N.P. faced over 25 years in prison but, in exchange for her testimony against Peters, had received a three-month sentence of time served. Tr. at 3, 39–40 (Jury Trial, Aug. 12, 2022). Defense counsel cross-examined N.P. about the agreement. *Id.* at 31. Although the jury was not given instructions on N.P.'s testimony specifically, it was instructed that it could "consider any evidence of bias or hostility displayed by the witnesses in weighing their testimony." RA, tab 98 at 31 (Jury Instrs., Aug. 17, 2022). N.P. was not granted immunity subject to the condition that her testimony substantially conform to an earlier statement given to police regardless of its truth; nor was it conditioned on her testimony resulting in a conviction. *See Allen*, 729 P.2d at 130–31. Instead, the plea agreement required she testify truthfully. *See Homick*, 289 P.3d at 830. The agreement stated that she agreed to "testify truthfully at any Court proceeding . . . to which he [sic] is called to testify, specifically concerning her own case or those involving her co-actor pursuant to Guam Police Department Report No. 19-06305 and written statement and/or testimony against her co-actor, Duayne Richard Peters, at trial." CF0112-20-01 (Plea Agreement at 3–4) (emphasis removed). Although inartfully worded,

if the agreement required N.P. to testify about prior statements, the language of the agreement shows that "the truthfulness of those statements [was] the mutually shared understanding of the witness and the prosecution as the basis for the plea bargain." *See Homick*, 289 P.3d at 830. The plea agreement was not expressly contingent on N.P. sticking to a particular version of events while testifying. *See Anderson*, 420 P.3d at 851. Peters has failed to show that N.P.'s testimony was "'tainted beyond redemption' and its admission denie[d] [him] a fair trial." *See Allen*, 729 P.2d at 130–31 (citation omitted).

[25] We conclude that Peters has failed to show any error committed by the trial court in admitting N.P.'s testimony that violated his right to a fair trial.

## B. The Claim of Ineffective Assistance of Counsel Is Better Brought Under a Petition for Writ of Habeas Corpus

[26] Peters claims his original counsel provided him with ineffective assistance because he failed to inspect the victim's journals. Appellant's Br. at 16. He argues original counsel's failure to obtain the journals before trial put Peters at a significant disadvantage, and that this conduct fell outside the standard of competent assistance. *Id.* at 17. Peters argues that while a *Brady* violation "may or may not have occurred, the fact remains that Mr. Peter[s]'s trial counsel undertook no effort to obtain those journals, and such a failure to conduct pretrial discovery constituted ineffective assistance of counsel."[5] Reply Br. at 3.

[27] An ineffective-assistance-of-counsel claim "may be heard on direct appeal but is more properly entertained in a collateral proceeding. This is 'because such claims generally require

---

[5] In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. We express no opinion on whether a *Brady* violation occurred in this case, or on whether Peters must prove the elements of a *Brady* violation in habeas proceedings to show he received ineffective assistance of counsel.

evidentiary inquiry and the record is often insufficiently complete to make a proper finding.'" *People v. Moses*, 2007 Guam 5 ¶ 9.

**[28]** The record here is insufficiently complete. Since the contents of the journals were not discussed during trial or admitted into evidence, a separate fact-finding proceeding is necessary to determine whether trial counsel performed a reasonable investigation into the journals and whether they contained exculpatory evidence. Therefore, this issue is better brought under a petition for writ of habeas corpus to better develop the record.

## V. CONCLUSION

**[29]** Peters fails to show it was plain error for the Superior Court to accept N.P.'s plea agreement. Peters also fails to show his right to a fair trial was violated when the trial court admitted N.P.'s testimony without objection. Finally, Peters's ineffective-assistance claim is better brought under a petition for writ of habeas corpus to develop a record about the contents of the potentially exculpatory evidence he alleges his trial counsel failed to review. We **AFFIRM**.


/s/                                               /s/

F. PHILIP CARBULLIDO                         KATHERINE A. MARAMAN

Associate Justice                                  Associate Justice


/s/

ROBERT J. TORRES

Chief Justice